UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TARRA GARNER-JONES, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) No. 1:21-cv-02928-JMS-DLP |
| ROBERT CARTER, et al., | ) ) ) |
| Defendants. | ) |

**Order Granting Defendant Wexford's Partial Motion to Dismiss
and Denying the IDOC Defendants' Partial Motion to Dismiss**

Archon Garner died by suicide on July 14, 2020, while in Indiana Department of Correction ("IDOC") custody at Pendleton Correctional Facility. Plaintiff Tarra Garner Jones has sued the prison medical provider (Wexford of Indiana, LLC), several Wexford employees, and several IDOC employees for their failure to prevent Mr. Garner's death.

Wexford has moved to dismiss the plaintiff's claim premised on respondeat superior liability. As explained below, that motion to dismiss is **granted**.

Several IDOC defendants have moved to dismiss some of the plaintiff's claims—specifically, her Eighth Amendment claims against certain defendants, her Americans with Disabilities Act and Rehabilitation Act claims, and her state-law wrongful death claims. This partial motion to dismiss is **denied**.

### I. Standards Governing Motions to Dismiss

The defendants' motions to dismiss are based on Federal Rule of Civil Procedure 12(b)(6). To survive a motion to dismiss on this basis, a complaint need only "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). In

1

reviewing the sufficiency of a complaint, the Court must accept all well-pled facts as true and draw all permissible inferences in the plaintiff's favor. *See Tucker v. City of Chicago*, 907 F.3d 487, 491 (7th Cir. 2018).

## II.     Summary of Relevant Allegations and Claims

### A.     Mr. Garner's Suicide and the Preceding Events

Mr. Garner suffered from serious mental illness for years before he entered IDOC custody in August 2018. Dkt. 1, ¶¶ 26−33. He was therefore assigned to Pendleton's Intensive Residential Treatment unit. *Id.*, ¶ 36.

From April 16 through June 24, 2020, Mr. Garner attempted suicide four times. In April, he attempted to hang himself. *Id.*, ¶ 51. On June 15, he swallowed nearly 50 pills of Remeron, a prescription antidepressant. *Id.*, ¶ 64. Following this attempt, Mr. Garner was placed on suicide watch until June 23. *Id.*, ¶¶ 65−69. The day he was released from suicide watch, he cut his neck and tried to hang himself with a sock. *Id.*, ¶ 70. The next day, while back on suicide watch, he used a toenail to remove the sutures from his neck and then put pen ink inside the open wound. *Id.*, ¶ 74. A medical provider described Mr. Garner as "very intent on self-harm and will seek any and all opportunities to do so at this time." *Id.*

On July 14, 2020, a Wexford employee removed Mr. Garner from suicide watch; he was returned to the general population within the Intensive Residential Treatment unit. *Id.*, ¶ 85. On the morning of July 16, Mr. Garner was found lying on the floor of his cell with a gaping cut to his neck and significant blood nearby. *Id.*, ¶ 96. He was pronounced dead 15 minutes later. *Id.* A razor blade—which Mr. Garner was not supposed to have—was found near his body. *Id.*, ¶ 98.

2

B.     The Defendants' Alleged Acts and Omissions[1]

Defendant Richard Latour was a counselor and a member of Mr. Garner's treatment team who was working in the Intensive Residential Treatment unit at or shortly before Mr. Garner's death. *Id.*, ¶¶ 15, 99. Counselor Latour knew Mr. Garner was a suicide risk and had expressed a clear intent and plan to kill himself if returned to general population. *Id.*, ¶ 99.

Vedora Hinshaw was the Unit Team Manager in the Intensive Residential Treatment unit. *Id.*, ¶ 16. She was working shortly before Mr. Garner's death. *Id.*, ¶ 99. She knew Mr. Garner was a suicide risk and had expressed a clear intent and plan to kill himself if returned to general population. *Id.*

Jessica Heatherly was a correctional officer at Pendleton. *Id.*, ¶ 17. Other inmates notified Officer Heatherly on July 15 that Mr. Garner was presently suicidal. *Id.*, ¶ 89. Officer Heatherly did not contact her supervisor, the prison warden, anyone on Mr. Garner's treatment team, or medical staff who could have acted to preserve Mr. Garner's life. *Id.*, ¶ 90. Officer Heatherly also failed to perform thirty-minute checks in Mr. Garner's housing unit and on Mr. Garner the evening of July 15 through the morning of July 16, 2020. *Id.*, ¶ 91.

Dushan Zatecky was Warden at Pendleton until sometime in July 2020, when Dennis Reagle became Warden. *Id.*, ¶¶ 13−14. Before that, Mr. Reagle was a Deputy Warden.[2] *Id.*, ¶ 13. Warden Zatecky and Deputy Warden Reagle had knowledge of Mr. Garner's multiple suicide attempts. *Id.*, ¶ 100. IDOC policy specifically requires that "All appropriate facility staff including the Warden, Nursing staff, and the [mental health provider] shall be notified of an offender's suicide attempt." *Id.* In June 2020, Mr. Garner's family notified defendant Deputy Warden Reagle

---

[1] This subsection summarizes the allegations against only the individual defendants who have moved to dismiss claims against them.
[2] Despite Mr. Reagle's promotion in July 2020, this Order refers to him as "Deputy Warden" to minimize confusion.

that they were concerned about Mr. Garner's mental health. *Id.*, ¶ 79. They asked Deputy Warden Reagle to transfer Mr. Garner to another facility, explaining it was a matter of life and death. *Id.* Warden Zatecky and Deputy Warden Reagle were aware of a severe staffing shortage at Pendleton in July 2020 and failed to take adequate measures to ensure that Mr. Garner was properly monitored upon his return to general population after suicide watch. *Id.*, ¶ 101.

Robert Carter, Jr., was the Commissioner of the IDOC. *Id.*, ¶ 12. The IDOC is a public entity and a recipient of federal funding. *Id.* Carter was responsible for ensuring prisoners with disabilities, including Mr. Garner, were not excluded from IDOC services, programs, or activities, or subjected to discrimination by the IDOC. *Id.* Commissioner Carter maintained an IDOC policy of not providing Mr. Garner and other acutely suicidal prisoners with inpatient psychiatric care at an outside hospital, even though prisoners with emergent physical health conditions were provided inpatient care at outside hospitals for those conditions. *Id.*, ¶ 102.

### C.     Claims at Issue

Count I of the complaint alleges that all the individual defendants[3] were deliberately indifferent to Mr. Garner's risk of self-harm. Warden Zatecky, Deputy Warden Reagle, Unit Team Manager Hinshaw, and Counselor Latour move to dismiss the claims against them in Count I.

Count II alleges that Wexford's policies, practices, and procedures caused violations of Mr. Garner's Eighth Amendment rights. In a footnote, the plaintiff alternatively alleges that Wexford is liable for its employees' constitutional violations under the respondeat superior doctrine. Wexford moves to dismiss only the respondeat superior claim.

---

[3] Commissioner Carter is sued in his official capacity only and is therefore not considered an individual defendant.

Counts III and IV allege that Commissioner Carter, in his official capacity, has violated the Americans with Disabilities Act, ("ADA") 42 U.S.C. § 12132, and the Rehabilitation Act, 29 U.S.C. § 794. Commissioner Carter moves to dismiss both Counts III and IV.

Count V alleges that all the individual defendants are liable for wrongful death under Indiana tort law. Warden Zatecky, Deputy Warden Reagle, Unit Team Manager Hinshaw, Counselor Latour, and Officer Heatherly move to dismiss the claims against them in Count V.

### III.     Wexford's Motion to Dismiss

As the plaintiff acknowledges, the respondeat superior claim against Wexford is foreclosed by Seventh Circuit law. *Shields v. IDOC*, 746 F.3d 782, 790 (7th Cir. 2014); *see* dkt. 23 at 6 ("Plaintiff recognizes that Defendant Wexford's position and its request for partial dismissal is consistent with Circuit precedent."). In filing a complaint, a plaintiff is permitted to assert claims based on "a nonfrivolous argument for extending, modifying, or reversing existing law." Fed. R. Civ. P. 11(b)(2). But in the face of a motion to dismiss under Rule 12(b)(6), only a claim supported by existing law may survive. Wexford's motion to dismiss the plaintiff's claim based on respondeat superior liability, dkt. [19], is **GRANTED**.

### IV.     The IDOC Defendants' Motion to Dismiss

#### A.     Eighth Amendment Claim

"[P]rison officials violate the Eighth Amendment if they are 'cognizant of the significant likelihood that an inmate may imminently seek to take his own life' and then 'fail to take reasonable steps to prevent the inmate from performing this act.'" *Miller v. Harbaugh*, 698 F.3d 956, 963 (7th Cir. 2012) (quoting *Sanville v. McCaughtry*, 266 F.3d 724, 737 (7th Cir. 2001)).

Warden Zatecky, Deputy Warden Reagle, Unit Team Manager Hinshaw, and Counselor Latour argue that the complaint does not allege that they were aware of a significant likelihood

5

that Mr. Garner would imminently seek to take his own life. But the complaint alleges that Warden Zatecky and Deputy Warden Reagle knew Mr. Garner had attempted suicide four times in the three months before his death. *See* dkt. 1, ¶ 100 ("Warden Zatecky and Deputy Warden Reagle had knowledge of Mr. Garner's multiple prior suicide attempts and his suicide risk."). This alone was sufficient to put them on notice of an imminent risk of self-harm. The complaint also alleges that Unit Team Manager Hinshaw and Counselor Latour "had knowledge of the fact that Mr. Garner was a suicide risk and had expressed a clear intent and plan to kill himself if returned to . . . general population." *Id.*, ¶ 99.

The defendants argue that medical staff's decision to release Mr. Garner into general population trumps their alleged knowledge about Mr. Garner's suicide risk. Dkt. 26 at 2 ("[A]t the point in time the mental health professionals took the deceased off suicide watch, the correctional defendant[s] had no reason to be aware of an imminent risk of suicide."). And the defendants are correct that a layperson may generally defer to a medical provider's expertise. *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011). But a medical professional's decision to release Mr. Garner to general population does not imply that the risk of suicide had completely passed, such that no precautions were required. Medical staff may have released Mr. Garner to general population with the understanding that heightened precautions would remain in place.

Moreover, deference to a medical professional cannot be "'blind or unthinking.'" *Reck v. Wexford Health Sources, Inc.*, 27 F.4th 473, 485 (7th Cir. 2022). Here, plaintiff has alleged that custody staff were on notice of Mr. Garner's multiple recent suicide attempts, including one when he had just been released from a previous stretch of suicide watch. At this stage of proceedings, the Court may infer from these facts that the custody defendants knew of an imminent risk of self-

harm, notwithstanding medical staff's decision to release Mr. Garner into general population. The IDOC defendants' motion to dismiss this claim is therefore **denied**.

B.  **ADA and Rehabilitation Act Claims**

The parties agree that the elements of plaintiff's ADA and Rehabilitation Act claims are identical. Dkt. 22 at 6; dkt. 24 at 13−14; *see Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 671−72 (7th Cir. 2012) ("[W]ith respect to this lawsuit, the analysis governing each statute is the same except that the Rehabilitation Act includes as an additional element the receipt of federal funds, which all states accept for their prisons."). To succeed on these claims, the plaintiff must show that "he is a qualified individual with a disability, that he was denied the benefits of the services, programs, or activities of a public entity or otherwise subjected to discrimination by such an entity, and that the denial or discrimination was by reason of his disability." *Hildreth v. Butler*, 960 F.3d 420, 430 (7th Cir. 2020) (cleaned up). "Refusing to make reasonable accommodations is tantamount to denying access." *Jaros*, 684 F.3d at 672.

The plaintiff's ADA and Rehabilitation Act claims are based on two sets of allegations. *First*, the defendants isolated Mr. Garner "for weeks and months on end on suicide watch, during which time he was denied access to programming, clothing, congregate meals, and phone calls to family." Dkt. 1, ¶ 134. Relatedly, the defendants failed to transfer Mr. Garner to another facility where he could have access to these services while being properly monitored for self-harm. *Id. Second,* Mr. Garner alleges that IDOC maintains a policy of not transporting inmates to outside hospitals for treatment of mental health emergencies, despite providing such transportation for inmates with physical health emergencies. *Id.*, ¶ 133.

7

The defendants do not address the first set of allegations—those regarding denial of access to programming, clothing, congregate meals, and phone calls to family. The motion to dismiss the plaintiff's ADA and Rehabilitation Act claims is therefore **denied** on that basis.

As for the claims regarding medical transport, the defendants argue that Mr. Garner was not discriminated against because IDOC does not provide the service he seeks, and "where a program or privilege was non-existent, the facility cannot have failed to accommodate him by 'denying' it to him." Dkt. 26 at 3. But IDOC does provide the service of transporting inmates for outside medical care during health emergencies, and the plaintiff alleges that Mr. Garner was denied such transportation because his health emergency was caused by his disability—namely his mental health conditions. *See* dkt. 1, ¶¶ 10, 133. The plaintiff has therefore alleged a plausible claim of discrimination under both the ADA and Rehabilitation Act.

Finally, although the defendants are correct that the plaintiff "'can have but one recovery'" between the two claims, the Court declines to dismiss either the ADA or Rehabilitation Act claim as duplicative of the other at this stage. *See* dkt. 22 at 11 (quoting *Jaros*, 684 F.3d at 672).

C.   **Wrongful Death**

The IDOC defendants argue that the Indiana Tort Claims Act provides them immunity from plaintiff's state-law wrongful death claim. Dkt. 22 at 11−13. But state actors are not entitled to immunity under the Indiana Tort Claims Act where their misconduct was "willful and wanton." Ind. Code § 34-13-3-5(c)(4).

The "willful and wanton" standard is nearly identical to the "deliberate indifference" standard that governs the plaintiff's Eighth Amendment claim. *Compare Ellis v. City of Martinville*, 940 N.E.2d 1197, 1205 (Ind. Ct. App. 2011) ("(1) the defendant must have knowledge of an impending danger or consciousness of a course of misconduct calculated to result in probable

8

injury; and (2) the actor's conduct must have exhibited an indifference to the consequences of his conduct." (cleaned up)), *with Johnson v. Prentice*, 29 F.4th 895, 904 (7th Cir. 2022) ("The plaintiff must prove that the defendant was subjectively aware of and intentionally disregarded an objectively serious risk to his health or safety.").

The IDOC defendants argue that while the standards are similar, they are not identical, and that the differences matter here. Dkt. 26 at 5. But they do not identify any meaningful differences between the standards, let alone explain why those differences would lead to different results in this case. Thus, the motion to dismiss fails as to the plaintiff's wrongful death claims for the same reasons it fails as to the plaintiff's Eighth Amendment claims.

### V.   Conclusion

Wexford's partial motion to dismiss, dkt. [19], is **granted**. The IDOC defendants' partial motion to dismiss, dkt. [21], is **denied**.

**IT IS SO ORDERED.**

Date: 6/28/2022

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

9

Distribution:

Douglass R. Bitner
KATZ KORIN CUNNINGHAM, P.C.
dbitner@kkclegal.com

Locke E Bowman
Loevy & Loevy
locke@loevy.com

Alexander Robert Carlisle
OFFICE OF THE ATTORNEY GENERAL
Alexander.Carlisle@atg.in.gov

Vanessa Del Valle
Roderick & Solange MacArthur Justice Center
vanessa.delvalle@law.northwestern.edu

Guy S. DiMartino
GUY S. DIMARTINO, PC
eservice@gsdimartino.com

Erica Lee Sawyer
INDIANA ATTORNEY GENERAL
Erica.Sawyer@atg.in.gov

Alexa Van Brunt
Roderick and Solange MacArthur Justice Center
a-vanbrunt@law.northwestern.edu