UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TARRA GARNER-JONES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:21-cv-02928-JMS-DLP |
| | ) |
| ROBERT CARTER, et al., | ) |
| | ) |
| Defendants. | ) |

**Order Denying Motion to Bifurcate Claims or Limit Discovery**

Plaintiff Tarra Garner-Jones brings this action as the administrator of the estate of Archon Garner, who died by suicide while in Indiana Department of Correction custody at Pendleton Correctional Facility. The estate sues a number of defendants, including individual Indiana Department of Correction employees, individual medical staff members, and the company that contracted with the Indiana Department of Correction to provide medical services to inmates—Wexford of Indiana, LLC. The estate's claims against Wexford are brought under the theory of liability outlined in *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658 (1978).[1] The defendants have moved to bifurcate the estate's *Monell* claim and delay resolution of that claim until after the other claims in this action have been resolved. Dkt. 64; dkt. 68. Alternatively or in addition, the defendants ask the Court to impose limitations on discovery in this action. *Id.*

---

[1] To succeed on its *Monell* claim, the estate must show that Wexford's own actions caused a constitutional injury to Mr. Garner. *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021); *see First Midwest Bank Guardian of Estate of LaPorta v. City of Chicago*, 988 F.3d 978, 986 (7th Cir. 2021) (identifying "three types of actions that can support municipal liability under § 1983: (1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." (cleaned up)). And if the estate does not identify a facially unconstitutional Wexford action, it must also show "a pattern of similar constitutional violations or a patently obvious risk of such violations." *Dean*, 18 F.4th at 240.

"For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims. When ordering a separate trial, the court must preserve any federal right to a jury trial." Fed. R. Civ. P. 42(b). So long as the decision to bifurcate does not infringe on any party's right to a jury trial, the district court has discretion whether to bifurcate or not. *Volkman v. Ryker*, 736 F.3d 1084, 1088−89 (7th Cir. 2013). If bifurcation would avoid prejudice to the moving party or promote judicial economy (or both), then it is permitted so long as no other party would be prejudiced. *Chlopek v. Federal Ins. Co.*, 499 F.3d 692, 700 (7th Cir. 2007). "The court must balance considerations of convenience, economy, expedition, and prejudice, depending on the peculiar facts and circumstances of each case." *Houskins v. Sheahan*, 549 F.3d 480, 495 (7th Cir. 2008).

The Court does not find that bifurcation is warranted for reasons of judicial economy. To be sure, the defendants are correct that the existence of a *Monell* claim will significantly increase the volume of discovery in this case. The defendants represent that they have produced thousands of pages of discovery responses—including more than 7000 pages of medical records—related to Mr. Garner's care. Dkt. 74, ¶ 3. This production would be required even without a *Monell* claim, but the estate has also requested "[a]ll documents including but not limited to incident reports, grievances, classification records, medical and mental health records, sick call requests, booking forms, mental health screening instruments, assessments, evaluations, transfer requests, protective custody requests, disciplinary records, emails, and other communications that are related to" 17 named individuals who allegedly died by suicide in Indiana Department of Correction custody. Dkt. 73-2, ¶ 23 (correctional defendants' response to requests for production). The estate has also made similar requests for all Indiana Department of Correction prisoners who have either died by

or attempted suicide from April 1, 2017, through the present. *Id.*, ¶¶ 27−28. Satisfying these requests would significantly increase the magnitude of discovery.

But it is far from clear that bifurcation would remedy the problem. In seeking bifurcation, the defendants rely on their intent to prove that Mr. Garner did not suffer any constitutional violation. *See* dkt. 64, ¶¶ 23−25. This would require every defendant medical provider to prevail on the estate's claims against them. And that's not all. The estate argues that Wexford's "policy itself is the basis for [Wexford's] constitutional violation," so Wexford could be liable even if the individual defendants are not. Dkt. 73 at 12; *cf. Glisson v. IDOC*, 849 F.3d 372, 378 (7th Cir. 2017) ("Without the full picture, each [healthcare provider] might think that her decisions were an appropriate response to a problem; her failure to situate the care within a broader context could be at worst negligent, or even grossly negligent, but not deliberately indifferent. But if institutional policies are themselves deliberately indifferent to the quality of care provided, institutional liability is possible."). The defendants have not explained how, given the estate's allegations, the *Monell* claim can be resolved without addressing it head-on.

The defendants also argue that bifurcation would avoid prejudice at trial. Dkt. 64, ¶ 27 ("[I]f Defendants are required to present evidence, and the Court allows Plaintiff to later present evidence regarding other individuals who have committed suicide, it could significantly prejudice individual Defendants and confuse a jury, potentially leading a jury to attribute actions taken against the other individuals against the named Defendants."). But the Court agrees with the estate that such an argument is premature. Indeed, the defendants offer no concrete examples of prejudice, likely because it is too early to know what evidence will be presented at trial and whether any potential prejudice can be mitigated by less drastic means than bifurcation.

The defendants' motion to bifurcate, dkt. [64], is therefore **denied**.

The defendants also request that the Court limit discovery, but their request is undeveloped. *See* dkt. 64, ¶ 29 ("Defendants are unsure of any specific way to agree to limit *Monell* discovery in this case, but at a minimum, Defendants request that *Monell* discovery related to suicides be limited to only the two (2) years [preceding] the death of Mr. Garner and limited to the facility for which Mr. Garner was housed, the IRT treatment unit at the Pendleton Correctional Facility."). The request to limit discovery is therefore **denied without prejudice**.

    **IT IS SO ORDERED.**

Date: 10/13/2022

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

Carlton Wayne Anker
Lewis and Wilkins LLP
anker@lewisandwilkins.com

Danielle Berkowsky
MacArthur Justice Center
danielle.berkowsky@macarthurjustice.org

Douglass R. Bitner
Stoll Keenon Ogden PLLC
doug.bitner@skofirm.com

Locke E Bowman
Loevy & Loevy
locke@loevy.com

Vanessa Del Valle
Roderick & Solange MacArthur Justice Center
vanessa.delvalle@law.northwestern.edu

Guy S. DiMartino
GUY S. DIMARTINO, PC
eservice@gsdimartino.com

Eric Ryan Shouse
Lewis And Wilkins LLP
shouse@lewisandwilkins.com

Alexa Van Brunt
Roderick and Solange MacArthur Justice Center
a-vanbrunt@law.northwestern.edu